IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Siya Real Estate LLC,     :
     Appellant  :
          :
   v.       :
          : No. 1001 C.D. 2018
Allentown City Zoning Hearing Board : Argued: December 13, 2018


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON    FILED: May 31, 2019


   Siya Real Estate LLC (Landowner) appeals from an order of the Court of Common Pleas of Lehigh County (trial court), dated June 21, 2018 and filed June 22, 2018, which affirmed the decision of the Allentown City Zoning Hearing Board (Board) denying Landowner's application for a special exception.

   Landowner owns property located at 248 North 9th Street, Allentown. *See* Board's Findings of Fact (F.F.) 1. The property is located in a medium high density residential district as well as a traditional neighborhood development overlay (TNDO) district. F.F. 3. The neighborhood is primarily residential with commercial uses located on many corner properties. F.F. 3. The second floor of the property consists of a four-bedroom dwelling unit and the third floor contains five boarding rooms. F.F. 4. The property also contains a detached garage with three parking spaces. *Id.* For decades, the first floor of the property has been used for various commercial purposes, most recently a tap room. *Id.* (The first floor of the property

will be referred to as the Subject Premises). The tap room closed on or about December 3, 2012. F.F. 6.

Landowner filed an application for a special exception, seeking to convert the first floor of the property to a retail grocery store and deli. F.F. 1; Reproduced Record (R.R.) at 1a-6a. Retail use is permitted in the TNDO district as a special exception. Section 1314.02.C.4 of the Allentown Zoning Ordinance (Zoning Ordinance).[1] Landowner also requested, in the alternative, a variance to establish the use. R.R. at 6a.

Viral (a.k.a. Sam) Patel (Patel) testified on behalf of Landowner. *See* 12/18/17 Notes of Testimony (N.T.) at 2 & 6, R.R. at 10a & 11a. Patel testified that Landowner proposes to use the Subject Premises as a grocery store with a deli counter for take-out sandwiches. N.T. at 21, R.R. at 14a; *see* F.F. 7. No tables or chairs will be provided. F.F. 7; N.T. at 21, R.R. at 14a. The proposed hours of operation would be Monday through Friday from 7:00 a.m. to 8:00 p.m. and Saturday and Sunday from 8:00 a.m. to 8:00 p.m. F.F. 8. Patel testified that approximately 100-150 customers per day would be expected at the Subject Premises and would be serviced by one to two employees. F.F. 10. Patel also testified that the primary users of the store will be people from the neighborhood. N.T. at 25, R.R. at 15a. Patel testified that the maximum number of employees at any one time would be two during the evening hours. N.T. at 22, R.R. at 15a. Patel stated that he would dedicate the garages to parking for the employees. F.F. 9; N.T. at 23, R.R. at 15a. Patel also testified about deliveries to the store. He stated he would get milk and snacks once per week; he would bring the other materials

_____

[1] Allentown, Pa., Ordinance No. 14835 (2015). The requirements for a special exception for commercial uses in a residential district within the TNDO are set forth in Section 1314.02.C.4 of the Zoning Ordinance.

2

himself.  N.T. at 29, R.R. at 16a.  Patel testified that there is nothing unusual about this grocery store and that there would not be any consequences to the neighborhood that one would not normally anticipate from a typical grocery store.  N.T. at 36, R.R. at 18a.  He stated that his store would not attract more people than a typical neighborhood grocery store.  N.T. at 37, R.R. at 18a.

Landowner also offered the expert testimony of a licensed real estate agent/broker, who is also a licensed appraiser (Realtor).  N.T. at 58-59, R.R. at 24a. The Realtor opined that the proposed use is the most appropriate use for the Subject Premises.  F.F. 11.

Three neighbors testified in opposition to the proposed use.  Shane Fillman (Fillman) testified that he walks his dogs in the neighborhood.  N.T. at 75, R.R. at 28a.  He expressed concern about the "number of bodegas/grocery stores, delis."  N.T. at 76, R.R. at 28a.  Fillman also expressed concern about litter.  N.T. at 78, R.R. at 29a.  He disagreed with Landowner's implication that a lot of people in the neighborhood walk and stated he sees a lot of people with vehicles.  N.T. at 79-80, R.R. at 29a.  Another neighbor, William Green (Green), expressed concern about the amount of trash that would be generated from the proposed use, although he conceded it would not generate any more trash than any other grocery store.  N.T. at 83 & 85, R.R. at 30a.  He also stated that there was no shortage of grocery stores in the area.  N.T. at 83, R.R. at 30a.  Green stated that he was concerned about quality of life and wanted to see something more aesthetically appropriate, pointing out that the property is part of the historic district.  N.T. at 83, R.R. at 30a.  Lastly, Marie Gehris (Gehris), the neighbor immediately next to the property, testified.  N.T. at 86, R.R. at 31a.  She complained about parking.  N.T. at 86-87, R.R. at 31a.  She also felt that there were enough grocery stores in the area and expressed concerns that the

proposed use would create more trash. N.T. at 88-89, R.R. at 31a. She also testified about the prior owner, calling him a "riffraff guy," and stated people would urinate in front of her sidewalk. N.T. at 95, R.R. at 33a. She stated she has not had any problems since the Subject Premises was vacant. N.T. at 95, R.R. at 33a. (Fillman, Green and Gehris are collectively referred to as Objectors).

Subsequently, the Board issued its decision denying Landowner's special exception application. Board's Decision at 4, Order. The Board did not address Landowner's alternative request for a variance. With respect to the special exception, the Board found that Landowner met most of the applicable requirements for a special exception except for one, namely, the "total impact provision" found in Subsection (a)(3) of Section 1314.02.C.4 of the Zoning Ordinance. Board's Decision at 3. Subsection (a)(3) provides:

> In considering whether to approve the special exception use, the Board shall consider whether the total impact upon the neighborhood and parking needed for all uses on the lot after the new use would be in operation would exceed the total impact of all uses on the lot that existed prior to the application. For example, this decision may consider whether the applicant proposes to reduce the number of dwelling units on the lot.

Zoning Ordinance § 1314.02.C.4(a)(3). The Board stated,

> The Board believes because of the substantial customer activity expected by Applicant (100-150 customers per day) the total impact upon the neighborhood and parking needed for all uses on the lot after the new use would be in operation would substantially exceed the total impact of all uses on the lot that existed prior to the application.

Board's Decision at 3.

4

Landowner appealed to the trial court, which affirmed.[2] With respect to the requirement in Subsection (a)(3) at issue here, the trial court stated that the subsection does not require the proposed use to be objectively equivalent to or less than the prior use, but merely directs the Board to consider the total impact. Trial Court Opinion dated 8/3/18 at 10. The trial court then stated that the language of the subsection implies that the Board is "to use its discretion to weigh and evaluate the total impact on a subjective basis in conjunction with the other requirements for the issuance of a special exception." *Id.* The trial court stated that this conclusion is supported by the fact that Subsection (a)(3) refers to parking and "Subsection (a)(5) affords the Board the authority to modify off-street parking requirements 'considering the total impact of the new uses of the lot versus the previous uses, and considering the number of customers arriving by public transit and/or walking.'" *Id.* (quoting Zoning Ordinance § 1314.02.C.4(a)(5)).

The trial court then noted that the question became whether Landowner presented sufficient evidence to shift the burden to Objectors. Trial Court Opinion dated 8/3/18 at 10. The trial court stated that Landowner did not present any evidence indicating what the prior use of the lot as a bar generated in terms of traffic and how that compared to the proposed use, which Landowner's witness testified would generate 100-150 customers per day. *Id.* The trial court stated that the Board did not receive any evidence to determine whether this was an increase or decrease from the prior use. *Id.* The trial court also stated that neither Landowner nor the Realtor testified whether the proposed use would have a negative impact on parking.

---

[2] The trial court issued an order and opinion dated June 21, 2018. After Landowner filed its statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), the trial court issued an additional opinion, dated August 3, 2018, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

5

*Id.* at 11. The trial court concluded that the Board did not receive any evidence on the impact of the proposed use on traffic. *Id.* The trial court stated that in the absence of the presentation of the evidence, "the Board was left to speculate on the traffic impact." *Id.* at 12. The trial court concluded that Landowner failed to meet its burden, and therefore, the burden never shifted to Objectors. *Id.* at 11-12. With respect to Landowner's claim for a variance, the trial court acknowledged that the Board's decision did not address Landowner's variance request. Trial Court Opinion dated 6/21/18 at 13. However, the trial court concluded that because the proposed use is authorized under the ordinance, subject to Board approval, Landowner's variance request was not proper, and therefore, any error is harmless. *Id.* at 12-13.

Landowner now appeals to this Court.[3] Before this Court, Landowner raises four issues: (1) did the Board and the trial court err in failing to apply the law pertaining to special exceptions that a zoning applicant has both the duty of presenting evidence and the burden of persuasion with respect to only the specific requirements of an ordinance; (2) did the Board and the trial court err in failing to apply the Zoning Ordinance as drafted, where the ordinance does not place any burden of proof requirements for nonspecific subjective ordinance criteria on an applicant for a special exception; (3) did the trial court err in ruling that a zoning hearing board can convert nonspecific ordinance provisions into specific provisions under rules of interpretation; and (4) did the trial court and the Board err in failing to decide Landowner's alternative claim for a variance? Landowner's Brief at 4.

---

[3] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640.

We begin by addressing the first three questions, all of which relate to the special exception. Essentially, Landowner's first three questions can be distilled to the question of whether Section 1314.02.C.4(a)(3) is an "objective" or "subjective" requirement. The question involves "statutory interpretation, a question of law, for which our standard of review is de novo, and our scope is plenary." *Hoffman Min. Co., Inc. v. Zoning Hearing Bd. of Adams Twp., Cambria Cty.*, 32 A.3d 587, 592 (Pa. 2011). As the Board states in its brief, how this question is answered decides whether an applicant has a duty to address the issue in the first instance. Board's Brief at 3. The parties have not cited to any case law interpreting this provision of the Zoning Ordinance, nor could we find any; it appears the Board is correct that this is a question of first impression. *See id.*

"Generally speaking, '[a] special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community.'" *Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018) (quoting *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 70 (Pa. Cmwlth. 1991)). "The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met." *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980). As this Court has explained, "[a]n applicant for a special exception has both the duty of presenting evidence and the burden of persuading the [board] that his proposed use satisfies the objective requirements of the zoning ordinance for the grant of a special exception." *Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1069 (Pa. Cmwlth.), *appeal granted in part on other grounds*, 190 A.3d 593 (Pa. 2018) (citing *Manor HealthCare*). "Once the applicant meets his burden of proof and persuasion, a

7

presumption arises that [the proposed use] is consistent with the health, safety and general welfare of the community." *Id.* "The burden then normally shifts to the objectors to the application to present evidence and persuade the [board] that the proposed use will have a generally detrimental effect on health, safety, and welfare." *Id.* "The evidence presented by objectors must show, to a high degree of probability, that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community." *Id.*

In *Berner*, this Court discussed our seminal case of *Bray*, which set forth the presentation and persuasion obligations of the parties in the context of an application for a special exception. We stated:

> In *Bray*, this Court outlined the rules regarding the "initial evidence presentation duty (duty) and persuasion burden (burden) in special exception cases" as follows:
>
> > Specific requirements, e.g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally:
> >
> > > The applicant has both the duty and the burden.
> >
> > General detrimental effect, e.g., to the health, safety and welfare of the neighborhood:
> >
> > Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.
> >
> > General policy concern, e.g., as to harmony with the spirit, intent or purpose of the ordinance:
> >
> > Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant.

*Berner*, 176 A.3d at 1069 (quoting *Bray*, 410 A.2d at 912–13) (emphasis omitted).

> This Court has classified specific requirements as follows:
>
> 1. The kind of use (or area, bulk, parking or other approval)[,] i.e., the threshold definition of what is authorized as a special exception;
>
> 2. Specific requirements or standards applicable to the special exception[,] e.g., special setbacks, size limits; and
>
> 3. Specific requirements applicable to such kind of use even when not a special exception[,] e.g., setback limits or size maximums or parking requirements applicable to that type of use whenever allowed, as a permitted use or otherwise.

*Bray*, 410 A.2d at 911.

Here, Landowner argues that Subsection (a)(3) states a nonspecific, subjective standard. Landowner maintains that the phrase "impact upon the neighborhood" is not a defined standard and that it involves the evaluation of many characteristics incapable of objective measurement. Landowner's Brief at 18. Landowner contends that the trial court seemingly acknowledged the subjective nature of this provision by stating the provision implies the Board is to use its discretion to weigh and evaluate the total impact on a subjective basis. *Id.* at 18. Landowner argues that the Zoning Ordinance does not place a burden on the applicant. *Id.* at 20. Landowner points out that the Zoning Ordinance says "the Board shall consider" and maintains that this instruction is directed to the Board, not the applicant. *Id.*

In response, the Board argues that Landowner did not present any evidence from which the Board could perform a comparative analysis regarding the

intensity of the use. Board's Brief at 5-6. The Board points out that Landowner could have engaged a planner or some other professional to compare the proposed use with the prior use. *Id.* at 5. The Board states that, without evidence, it was put in the impossible position of having to guess. *Id.* at 6. The Board further argues that whether Objectors presented sufficient evidence to establish that the proposed use would be detrimental to the health, safety or welfare of the community is irrelevant because Landowner did not first go forward with its duty. *See id.* at 5. The Board argues that Subsection (a)(3) is not a subjective requirement akin to the detriment to the health, safety and welfare of the neighborhood requirement because that requirement is found in a separate section of the Zoning Ordinance, namely Section 1307.10.C.[4] *Id.* at 4. Alternatively, the Board argues that if this Court overturns the

---

[4] Section 1307.10 of the Zoning Ordinance, entitled Special Exception Procedures, is "intended to provide the Board with a guide for the purpose of reviewing certain uses not otherwise permitted in specified districts except under restrictions of this Ordinance." Zoning Ordinance § 1307.10.A. Section 1307.10.C provides:

Zoning Hearing Board Approval.

1. Special exceptions may be authorized by the Zoning Hearing Board only in accordance with the requirements of this Ordinance. The Zoning Hearing Board may place reasonable conditions upon any approval under this Ordinance. Such conditions may be intended to: protect the public health and safety, protect existing residential neighborhoods, provide for compatible development, minimize traffic congestion and safety problems, and serve other purposes and objectives of this Ordinance.

2. The Zoning Hearing Board shall not approve a special exception application if evidence is presented that:

   a. The use would result in a significant traffic safety hazard;
   b. The use would create a significant public health and/or safety hazard; and/or
   c. The use would cause substantial negative impacts upon the desirable character of an established residential neighborhood.

10

Board's decision, a remand is necessary so that the Board may impose conditions. *Id.* at 7-8.

We conclude that the ordinance provision here is *not* a specific, objective requirement, and therefore, the trial court and the Board erred in placing the duty and the burden on the Landowner. Three factors lead us to this conclusion: (1) the "total impact" is not sufficiently defined to be considered a specific requirement; (2) as recognized by the trial court, the Board is directed to "consider" the total impact and, in doing so, is weighing the evidence, and therefore, the requirement is not objective; and (3) the nature of Subsection (a)(3), in essence, deals with the health, safety and welfare of the community. We will address each factor.

First, the "total impact upon the neighborhood" is not a defined standard and can involve the evaluation of many characteristics that are not specifically enumerated. In contrast, in *Berner*, this Court determined that a disputed ordinance provision which addressed "adverse impacts" was a specific requirement because the provision required the applicant to make certain clearly identified submissions and it expressly enumerated categories of adverse impacts that it was aimed at avoiding. *Berner*, 176 A.3d at 1072. Additionally, the Court in *Berner* noted that the types of items required to be submitted would be in the primary control of the applicant. *Id.* at 1073. Here, we acknowledge that Subsection (a)(3) requires the Board to consider parking, something specific, but that is not the only consideration. It is clear that *in addition to* parking, the ordinance requires the Board to consider "the total impact upon the neighborhood." *See* Zoning Ordinance § 1314.02.C.4(a)(3) ("the Board shall consider whether the total impact on the

---

d. The application does not meet the criteria for approval found in Section 1327 of this ordinance.

Zoning Ordinance § 1307.10.C.

11

neighborhood *and* the parking needed . . .") (emphasis added). Unlike *Berner*, the applicant here is left to guess at the categories of impact the ordinance aims to avoid. "Specificity is the essential characteristic of operative special exception requirements in an ordinance." *Bray*, 410 A.2d at 911. When something is specific, it is "[c]learly defined or identified." Specific, English by Oxford Dictionaries, https://en.oxforddictionaries.com/definition/specific (last visited May 30, 2019). That is not the case here.

Second, as the trial court aptly noted, the language of the subsection, including the direction that the Board "consider" the total impact, "implies that the Board is to use its discretion to weigh and evaluate the total impact on a subjective basis" in conjunction with other requirements. Trial Court Opinion dated 8/3/18 at 10. When a board is weighing evidence, this is subjective. Even if the Board is weighing evidence regarding something that could be objectively determined, such as knowing that the use will generate a larger number of customers than a prior use, or knowing the number of dwelling units on the lot, the fact remains that the Board is still engaging in weighing, which is a subjective determination. By requiring the Board to "consider" the total impact, and necessarily incorporating an evidentiary weighing element, two different factfinders could come up with two different results. When this is possible, the requirement cannot be said to be objective. Additionally, as the trial court pointed out, Subsection (a)(3) does not require the total impact upon the neighborhood of the proposed use to be objectively equivalent to or less than the prior use. *Id.* Indeed, the disputed provision does not say what should happen with the application if the number or "impact" under the proposed use is more (or less) than all prior uses, only that the Board shall "consider" the total impact. *See generally* Zoning Ordinance § 1314.02.C.4(a)(3). For a special exception, however,

12

if an applicant meets the *specific* criteria set forth, the applicant is entitled to a special exception. *See Bray*.

Lastly, and importantly, the essence of Section 1314.02.C.4(a)(3) is to address detrimental effects, *i.e.*, the health, safety and welfare on the community. The objectors bear the evidence presentation duty on general detrimental effects; the ordinance cannot shift the duty. *Berner*, 176 A.3d at 1069 (quoting *Bray*). Additionally, where, as here, the terms of the ordinance have not expressly placed the persuasion burden regarding general detrimental effects on the applicant, the objectors bear the burden of persuasion as to all general detrimental effects. *See Tower Access Grp.*, 192 A.3d at 302 (stating where ordinance does not expressly place burden of persuasion regarding detrimental effects to health, safety and welfare on applicant, applicant has burden of persuasion only as to specific requirements, while objectors have burden as to all detrimental effects).

Further, we reject the Board's argument that because another provision of the zoning ordinance, namely Section 1307.10.C, addresses the detrimental impact on the health, safety and welfare of the community, the requirement in Section 1314.02.C.4(a)(3) has to be a specific requirement, the duty and burden of which are on the applicant. The Board's acknowledgment that the types of detrimental effects addressed in Section 1307.10.C are those for which the burden is on Objectors actually supports our conclusion. The essence of the requirement to consider the "total impact upon the neighborhood" in Section 1314.02.C.4(a)(3) is of the same genre as that set forth in Section 1307.10.C. The only difference between the Sections is that Section 1307.10.C evaluates the effects by comparing them to the impact not normally generated by the same type of use, consistent with our case law, whereas Section 1314.02.C.4(a)(3) of the Zoning Ordinance evaluates

13

the effects by comparing them to the impact generated by all prior uses on the lot. Objectors have the evidence presentation duty and burden as to all general detrimental effects of the proposed use. *See Tower Access Grp.*, 192 A.3d at 302. Thus, we reject the Board's argument that Landowner did not sustain its duty with respect to the total impact provision. The duty to present such evidence was on Objectors, not Landowner. *See Berner*, 176 A.3d at 1069 (quoting *Bray*).

Accordingly, the trial court erred as a matter of law when it affirmed the Board's decision placing the duty and burden under Subsection (a)(3) on the Landowner. While normally we would remand the matter to the Board to consider the evidence, placing the burden on the appropriate party, because Objectors' evidence is insufficient as a matter of law to constitute substantial evidence which could support a finding in Objectors' favor, in the interest of judicial economy, we will address the matter.

We are mindful that "the burden placed on the objectors is a heavy one." *Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017). Objectors "must demonstrate more than unsubstantiated concerns or vague generalities, and [m]ere speculation as to possible harm is insufficient." *Dunbar v. Zoning Hearing Bd. of City of Bethlehem*, 144 A.3d 219, 226 (Pa. Cmwlth. 2016) (internal quotation marks omitted); *see Marr Dev.*, 166 A.3d at 483 (stating that objectors "cannot meet their burden by merely speculating as to possible harm; they must show a high degree of probability that the proposed use will substantially affect the health and safety of the community") (internal quotation marks and brackets omitted). "Further, mere lay testimony of concerns regarding increased traffic . . . is insufficient to support the denial of a special exception." *Dunbar*, 144 A.3d at 226; *see Marr Development*, 166 A.3d at 484

14

(finding objectors' evidence insufficient to establish that proposed use would generate traffic not normally generated by that type of use where no traffic study was presented and objectors simply testified as to their opinion that traffic would increase). Here, Objectors expressed concerns about litter, the fact that there are already grocery stores in the area, traffic, parking, and the quality of life. With respect to the testimony regarding the fact that there are grocery stores in the area, this is irrelevant as it ignores the fact that this type of use, as a special exception, is expressly permitted, absent a showing of a detrimental effect on the community. *See Tower Access Grp.,* 192 A.3d at 300. Objectors' remaining testimony was speculative, at best, and, therefore, would not constitute competent evidence that would be sufficient to carry Objectors' heavy burden. *See Marr Development*, 166 A.3d at 484 (finding that fears expressed by objectors concerning stormwater management, flooding and increased traffic were speculative and inadequate to constitute substantial evidence).

Accordingly, for the foregoing reasons, we reverse the trial court's order affirming the Board's decision, and we remand this matter to the trial court to remand to the Board with instructions to the Board to grant Landowner's application for a special exception, subject to the Board imposing conditions.[5]

_____
CHRISTINE FIZZANO CANNON, Judge

[5] *See* Section 912.1 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10912.1 (permitting a zoning hearing board to attach reasonable conditions and safeguards when granting a special exception); Zoning Ordinance § 1314.02.C.4(a)(4) (concerning special exception for commercial use in a residential district and stating Board shall have authority to place reasonable conditions upon use).

Because of our disposition, we need not address Landowner's argument regarding its request, in the alternative, for a variance.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA


Siya Real Estate LLC,         :
         Appellant     :
                    :
     v.              :
                    :   No. 1001 C.D. 2018
Allentown City Zoning Hearing Board   :


O R D E R


AND NOW, this 31st day of May, 2019, the order of the Court of Common Pleas of Lehigh County (trial court), dated June 21, 2018 and filed June 22, 2018, is REVERSED, and the matter is REMANDED to the trial court with instructions for the trial court to remand the matter to the Allentown City Zoning Hearing Board (Board) with instructions to grant Siya Real Estate LLC's application for a special exception, subject to the Board imposing conditions in accordance with the foregoing opinion.

Jurisdiction relinquished.


_____
CHRISTINE FIZZANO CANNON, Judge