# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Estate of Robert Romeril and      :
Gwendolyn-Jane Romeril,      :
                 Appellants      :
     :
              v.      :      No. 835 C.D. 2022
     :      SUBMITTED:  May 7, 2024
City of Bethlehem Zoning Hearing      :
Board and Morning Star Partners, LLC    :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED:  June 10, 2024**

Appellants, Estate of Robert Romeril and Gwendolyn-Jane Romeril, appeal from an order of the Court of Common Pleas of Northampton County, affirming the decision of the Zoning Hearing Board of the City of Bethlehem that granted Morning Star Partners, LLC's (Morning Star) application for a special exception.[1]  Upon review, we affirm.

At the center of this long-running dispute is the property owned by Morning Star and located at 2 West Market Street, Bethlehem, Northampton County, Pennsylvania.  Board's Finding of Fact (F.F.) 1-2.  The Property is located in the

---

[1] This case was considered seriately with related cases *Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond, and Bruce Haines v. City of Bethlehem and City of Bethlehem Zoning Hearing Board, and Morning Star Partners, LLC* (Pa. Cmwlth., No. 834 C.D. 2022, filed June 10, 2024), and *Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond and Bruce Haines v. City of Bethlehem and Morning Star Partners, LLC* (Pa. Cmwlth., No. 836 C.D. 2022, filed June 10, 2024).

RT-Residential Zoning District at the corner of Market and New Streets. F.F. 3, 33. At the time of the application for a special exception, the property contained a single family dwelling, two attached historic buildings housing retail uses, and a garage with an apartment on the second floor. F.F. 12-14.

Commercial use is not permitted in the RT district. As such, Morning Star made several previous attempts to obtain variance relief in order to conduct a business office use out of the single family dwelling portion of the property. *See Fowler v. City of Bethlehem Zoning Hearing Bd.*, 187 A.3d 287 (Pa. Cmwlth. 2018).[2] While its first two zoning applications failed, the Board granted Morning Star's third application and a certificate of occupancy was issued in June 2017 to change the single family dwelling to a business office. *Id.* at 292; F.F. 16. Quadrant Private Wealth subsequently occupied the building as Morning Star's tenant and has used the dwelling for its wealth management services ever since. F.F. 9-10, 17, 49.[3] This Court ultimately reversed the Board's decision on appeal and the City then issued an enforcement notice in August 2018 giving Morning Star 30 days to convert the building back to a single family dwelling. *Fowler*, 187 A.3d at 298; F.F. 18, 20-21. Morning Star appealed the enforcement notice in September 2018, and was permitted to continue to use the building as a business office pending the outcome of its appeal. F.F. 22-23.

---

[2] As the *Fowler* Court also noted, retail is not a permitted use in the RT district, but because the retail uses on the Property predate the City's Zoning Ordinance, they are lawful nonconforming uses. 187 A.3d at 289.

[3] Quadrant is technically the tenant of the subject property whose use is at issue, and was authorized to appear before the Board by Morning Star. *See* Board's Decision at 1. However, because Morning Star is the owner of the property and was the entity which was granted intervenor status and has appeared before both the trial court and this Court, we will refer to Morning Star as the party-in-interest throughout this Opinion.

While Morning Star's appeal was still pending, the City amended its Zoning Ordinance[4] to add subsection (b) to Article 1304.04, which permits the reuse of single family dwellings within the RT district for office use provided certain criteria are met.[5]  F.F. 24, 29.  Specifically, the Amendment provides as follows:

(b) As a special exception, the conversion of a single family dwelling to an office use may be approved by the [] Board [] provided all of the following requirements are met:

(1) The lot shall be at the corner of [two] streets and shall contain some form of a nonconforming retail or commercial use in combination with a single family dwelling.

(2) This subsection [two] may allow an office use to be established in the single family dwelling even while the nonconforming commercial or retail use on the same lot continues.  The office use shall be limited to within the existing single family dwelling, and may not involve building expansions for the use, other than as may be necessary for fire safety or handicapped access.

(3) In considering whether to approve the special exception use, the Board shall consider whether the total impact upon the neighborhood and parking needed for all uses on the lot after the new use would be in operation would exceed the total impact of all uses on the lot that existed prior to the application.  For example, this decision may consider whether the applicant proposes to reduce the number of dwelling units on the lot.

(4) The Board shall have the authority to place reasonable conditions upon the office use, such as but not limited to: limits on hours of operation, limits on the maximum floor area occupied by the use, requirements

---

[4] City of Bethlehem Zoning Ordinance, Ordinance No. 2210 (1970), *as amended*.

[5] We note that the Amendment was requested by Morning Star, pursuant to Article 1326.02(c) of the Ordinance.

that the operator of the use regularly collect litter on the sidewalk and gutters at edge of street adjacent to the lot, and conditions that preserve and enhance the residential character of the neighborhood.

(5) As part of the special exception, the Board shall have the authority to modify off-street parking requirements, considering the total impact of the new uses of the lot versus the previous uses, and considering whether a percentage of clients are likely to arrive by public transit and/or walking. The Board may also approve a reduction in the required parking as part of the special exception approval if the applicant proves that there is an excess of on-street parking spaces during hours when the business will be in operation.

(6) Signs shall need approval as part of the special exception process. The Board may approve a total sign area of up to 20 square feet, which shall be limited to a window or wall sign. All signs must comply with any applicable Historical Architectural Review Board [] and Historic Conservation Commission [] regulations and any other applicable laws and regulations.

(7) The office uses to be permitted under this section shall be limited to those of medicine, law, architecture, engineering, art, religion, music, insurance, real estate, psychology, accounting, and financial services.

Reproduced Record (R.R.) at 45a-46a.

In March 2019, Morning Star submitted its application to the Board for a special exception pursuant to the Amendment seeking to convert the single family dwelling on the property to an office use. R.R. at 124a-26a. Morning Star continued to use the property for its business operations at the time the Amendment was enacted and did not withdraw its appeal of the enforcement notice until June 2019. F.F. 10, 23-24, 30, 49.

The Board held a public hearing on the application on June 12, 2019, at which Appellants presented testimony and evidence in opposition thereto. F.F. 53-54. The Board later voted unanimously to grant the application for a special exception subject to two conditions regarding parking and signage. Board's Decision at 17. As the Board explained, Morning Star met its initial burden of establishing that the proposed office use satisfies the objective requirements of the Amendment for the grant of a special exception. The Board specifically rejected Appellants' argument that the subject building on the property is not a single family dwelling since it already contains an office and has been used as an office for some time, explaining that the argument "puts form over substance." Board's Decision at 11. Moreover, Appellants failed to demonstrate that Morning Star's proposed use of the property would be detrimental to the health, safety, and welfare of the public.

Appellants appealed to the trial court, which affirmed without taking any additional evidence. This appeal followed.[6]

The sole argument Appellants raise before this Court[7] is that the Board erred in granting the special exception because Morning Star failed to meet the objective requirements of the Amendment. More specifically, Appellants maintain that the Board erred in finding that the property contained a single family dwelling, which is a necessary element. Appellants stress that Morning Star was and has been utilizing the residential building on the property as an office since the time the

---

[6] Because the trial court did not take additional evidence, our review is limited to determining whether the Board erred as a matter of law or abused its discretion. *Fowler*, 187 A.3d at 294 n.8 [citing *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006)].

[7] While Appellants' brief lists three questions presented, they are all iterations of the same issue – that being whether the Board erred in finding that the property contained a single family dwelling. *See* Appellants' Br. at 4. Moreover, the argument portion of their brief is not broken into separate sections, but rather addresses this lone issue.

application was submitted, arguing that this undisputed fact is dispositive. We disagree.

To preface the parties' arguments we note that, despite its name, "[a] special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance . . . are met[.]" *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). Generally, "an applicant for a special exception has both the duty of presenting evidence and the burden of persuading the board that his proposed use satisfies the objective [or specific] requirements of the zoning ordinance for the grant of a special exception." *Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019) (quotation omitted). Once an applicant meets its burden of proof and persuasion regarding the objective requirements, "a presumption arises that [] the proposed use [] is consistent with the health, safety[,] and general welfare of the community." *Id.* (quotation omitted). "The burden then normally shifts to the objectors to the application to present evidence and persuade the [zoning hearing] board[] that the proposed use will have a generally detrimental effect on health, safety, and welfare." *Id.* (quotation omitted). *See also Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017) (*en banc*).

As indicated above, the only issue raised on appeal is whether Morning Star met its burden regarding the specific or objective criterion for a special exception under the Amendment that the property contain a single family dwelling. Following this Court's decision in *Fowler* and as evidenced by the City's enforcement notice, the permitted use of the property's residential building at the time of the application was and continues to be a single family dwelling. Appellants

6

fail to cite to any authority mandating that a property must currently be used as a single family dwelling in order to qualify as such, and this Court is not aware of any case law supporting this proposition. To the extent it is relevant, the Board credited the evidence and testimony provided by Morning Star that the building still meets the physical requirements of a single family dwelling under the Ordinance, in that "it still contains a kitchen, a bath and rooms that could be used for bedrooms." F.F. 27. Appellants essentially assert that Morning Star was required to discontinue its office use and vacate the building before seeking relief under the Amendment. We agree with the Board that this argument elevates form over substance and serves no legitimate purpose as Morning Star intends to use the property just as it has been.

We agree with the trial court that there is substantial evidence in the record to support the Board's conclusion that Morning Star met its burden to be entitled to a special exception. Accordingly, we affirm.


_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Estate of Robert Romeril and : 
Gwendolyn-Jane Romeril, : 
                 Appellants : 
               : 
          v. :   No. 835 C.D. 2022
               : 
City of Bethlehem Zoning Hearing : 
Board and Morning Star Partners, LLC : 

# **O R D E R**

AND NOW, this 10th day of June, 2024, the Order of the Court of Common Pleas of Northampton County is AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita